UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  08/26/2024
```

-------------------------------------------------------------------X
                                          :

STEVIE ROBINSON,                    :

                       Plaintiff,     :                 23-cv-9366 (LJL)

                     -v-           :

                               :        OPINION & ORDER

MSG ENTERTAINMENT GROUP, LLC, et al.,  :

                     Defendants.    :

-------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

Defendants Todd Jackson, Michael Bailey, Brian Conroy, Darian Jennings, Azure-Dee Martin, and Eileen McNamara (collectively, "Individual Defendants") and MSG Entertainment Group, LLC and MSG Entertainment Holdings, LLC (together with Individual Defendants, "Defendants") move, pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), to dismiss counts one through ten, thirteen, and fifteen of the Amended Complaint. Dkt. No. 42.[1] For the following reasons, Defendants' motion to dismiss is granted in part and denied in part.

## BACKGROUND

The Court accepts the allegations of Plaintiff Stevie Robinson's ("Plaintiff") Amended Complaint as true for purposes of this motion.

Plaintiff is a 58-year-old African American man. Dkt. No. 51 ("AC") ¶ 15. Over 22 years ago, in November 2000, he was convicted of one count of felony sodomy in the first degree, two counts of felony sexual abuse in the first degree, and one count of endangering the welfare of a child, in connection with his abuse of a six-year-old girl. *Id.* ¶¶ 15, 31; *see People v. Robinson*,

---

[1] Defendants do not move to dismiss counts eleven, twelve and fourteen of the Amended Complaint, which allege disability discrimination.

772 N.Y.S.2d 586 (2d Dep't 2004), *lv. denied*, 3 N.Y.3d 646 (N.Y. 2004); New York State Division of Criminal Justice Services, Sex Offender Registry, https://www.criminaljustice.ny.gov/SomsSUBDirectory/offenderDetails.jsp?offenderid=52938& lang=EN ("Sex Offender Registry").[2]  In addition, Plaintiff has attention deficit disorder ("ADD") and attention-deficit hyperactivity disorder ("ADHD").  *Id.* ¶¶ 15, 35.

Defendants MSG Entertainment Group, LLC, MSG Entertainment Holdings, LLC, and MSG Arena LLC (collectively "MSG") own and operate the Madison Square Garden arena and venue in New York City.  *Id.* ¶¶ 19–20.

Plaintiff was employed by Defendants as an usher at Madison Square Garden from December 18, 2021, until his employment was terminated in or around August 2022.  *Id.* ¶¶ 50, 60.  Plaintiff originally applied for the usher position in November 2021 and obtained the position following an application process, multiple interviews, and a background check.  *Id.* ¶¶ 41–46, 48. He participated in an orientation process on or about December 14, 2021, and started working as an usher on or about December 18, 2021.  *Id.* ¶ 50.

After assuming the position, Plaintiff performed the duties of his job with "extreme excitement, eagerness, confidence and caution," going "above and beyond to provide patrons in his assigned areas with the best customer experience."  *Id.* ¶¶ 58–59.  For eight months, he performed the duties of usher without serious problems or issues.  *Id.* ¶ 60.

---

[2] There is no dispute that the Court may take judicial notice of the information in the Sex Offender Registry and in court records.  *See* Dkt. No. 44 at 4; *Zielinski v. DeFreest*, 2013 WL 4838833, at *1 n.2 (S.D.N.Y. Sept. 10, 2013).  Plaintiff continues to maintain his innocence and to challenge his conviction.  AC ¶ 31.

However, at some point in December 2021—within weeks of his start date—defendant Jennings, employee relations manager at MSG, issued a directive instructing Plaintiff "to not enter the staff office for help so much" and that Plaintiff "should not enter the staff office if [he] did not need to." *Id.* ¶¶ 65, 138. Jennings' directive confused Plaintiff because he believed that employees were required to report to the staffing office to resolve issues related to work and for assistance with schedules and other work-related matters. *Id.* ¶ 66. Therefore, Plaintiff continued to visit the staffing office for work-related assistance because he did not know where else to get the assistance he needed. *Id.* ¶ 67. Plaintiff "would often advise the personnel in the staffing office that he was coming to them for help because he was 'slow' to figure some things out, 'couldn't understand how to do' certain things and/or has 'ADD/ADHD.'" *Id.* ¶ 70 (emphasis omitted). No person ever informed Plaintiff that he was violating Jennings' directive, and he did not receive a second instruction to enter the staffing office less often. *Id.* ¶¶ 68, 71–73, 145–147.

Months later, on or about August 4, 2022, Plaintiff's parole officer informed Plaintiff that the officer was going to contact MSG to verify Plaintiff's employment. *Id.* ¶ 79. On or about August 5, 2022, the parole officer contacted MSG to verify Plaintiff's employment and informed MSG of Plaintiff's conviction. *Id.* ¶¶ 80–81. Within a day of having been contacted by the parole officer, MSG created and circulated throughout the MSG facility a posting that stated that Plaintiff was "a registered sexually violent offender with a high-risk level." *Id.* ¶¶ 84–96. The posting contained Plaintiff's name, age, date of birth, gender, hair color, eye color, weight, and height, as well as his photograph and last known address. *Id.* ¶¶ 97–98. It instructed recipients to inform defendants Jackson, Conroy, or Bailey if Plaintiff was "seen on or near venue property." *Id.* ¶ 99.

Plaintiff was not informed about the posting by management at MSG. *Id.* ¶ 126. He learned about the posting when an employee who worked at MSG contacted him and told him about the

posting on or about Sunday August 7, 2022. *Id.* ¶ 121.  On Monday, August 8, 2022, Jennings advised Plaintiff that his employment was being terminated. *Id.* ¶ 134.  To justify the termination, Jennings told Plaintiff that Plaintiff was being terminated from his usher position because he had not complied with the directive Jennings issued more than seven months earlier to reduce his visits to the staffing office. *Id.* ¶139.

On or about September 27, 2022, Plaintiff attended a Step 1 Grievance hearing with his union representative and defendants Jennings, Martin, and McNamara. *Id.* ¶ 187.  During the meeting, Jennings and Martin again claimed that Plaintiff's employment was being terminated due to his violation of Jennings' directive. *Id.* ¶ 188.  Plaintiff and his union representative asked for information as to how Plaintiff violated the directive. *Id.* ¶ 190.  However, Jennings, Martin, and McNamara refused to provide the information to Plaintiff or to provide him any specifics regarding his alleged violations of the directive. *Id.* ¶¶ 189, 191, 193.  In addition, during the meeting, Jennings and Martin admitted that they were responsible for the posting and for banning Plaintiff from MSG for all purposes, justifying the decision on the basis that Plaintiff had lied on his employment background check. *Id.* ¶¶ 196–197.  Plaintiff responded that he had truthfully disclosed his information on his application, and Jennings and Martin declined to tell him what information he had supposedly falsified or failed to disclose. *Id.* ¶¶ 198, 200–201.

## PROCEDURAL HISTORY

Plaintiff initiated this action by complaint filed on October 24, 2023.  Dkt. No. 1.

On January 16, 2024, Defendants filed a partial motion to dismiss, along with a memorandum of law and a declaration in support of the motion.  Dkt. Nos. 31, 33, 35.  Defendants filed a revised partial motion to dismiss and memorandum of law in support of the motion on February 7, 2024.  Dkt. Nos. 42–43.  On February 16, 2024, Plaintiff filed a memorandum of law in opposition to the motion to dismiss.  Dkt. No. 44.  On March 8, 2024, Defendants filed a reply

memorandum of law in further support of their motion, along with two supporting declarations. Dkt. Nos. 48–50.

Plaintiff filed an amended complaint on March 13, 2024, limited to amending the caption and complaint to name the correct corporate entity that employed Plaintiff, MSG Arena, LLC. Dkt. No. 51.  On March 14, 2024, the Court issued an order directing the parties to inform the Court if they objected to the Court treating Defendants' partial motion to dismiss the complaint as directed to the Amended Complaint.  Dkt. No. 52.  No party objected.

## LEGAL STANDARD

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a court must accept as true all factual allegations in the complaint and draw all possible inferences from those allegations in favor of the plaintiff.  *See Rombach v. Chang*, 355 F.3d 164, 169 (2d Cir. 2004).  This requirement "is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

A complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement" in order to survive dismissal.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The ultimate question is whether "[a] claim has facial plausibility, [i.e.,] the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.  Put another way, the plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting

the claim]." *Twombly*, 550 U.S. at 556; *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011) (same).

## DISCUSSION

The Amended Complaint contains fifteen causes of action. Plaintiff's first cause of action alleges that MSG violated Section 296(15) of the New York State Human Rights Law ("NYSHRL") by terminating Plaintiff's employment because of his prior criminal conviction. AC ¶¶ 222–233. Plaintiff's second cause of action alleges that MSG violated that same provision of the NYSHRL by denying Plaintiff a license to access the MSG facility based on his prior criminal conviction. *Id.* ¶¶ 234–244. Plaintiff's third cause of action alleges that the Individual Defendants violated Section 296(6) of the NYSHRL by aiding and abetting MSG to deny Plaintiff a license to access the MSG facility. *Id.* ¶¶ 245–257. Plaintiff's fourth cause of action alleges that MSG violated Section 8-107(10) of the New York City Human Rights Law ("NYCHRL") by denying him employment solely due to his prior criminal conviction. *Id.* ¶¶ 258–267. Plaintiff's fifth cause of action alleges that MSG violated that same provision of the NYCHRL by denying Plaintiff a license or permit to access the MSG facility based on his prior criminal conviction. *Id.* ¶¶ 268–279. Plaintiff's sixth cause of action alleges that the Individual Defendants violated Section 8-107(6) of the NYCHRL by aiding and abetting MSG in its denial to Plaintiff of employment and of a license to access the MSG facility on the basis of his prior criminal conviction. *Id.* ¶¶ 280–293. Plaintiff's seventh cause of action alleges that MSG violated Section 752 of the New York State Correction Law by denying him employment on the basis of his prior criminal conviction. *Id.* ¶¶ 294–304. Plaintiff's eighth cause of action alleges a claim for breach of contract and breach of the collective bargaining agreement against MSG. *Id.* ¶¶ 217–233. Plaintiff's ninth cause of action alleges a claim for tortious interference with contract against the Individual Defendants. *Id.* ¶¶ 234–243. Plaintiff's tenth cause of action alleges a claim for

negligence and gross negligence against all Defendants. *Id.* ¶¶ 244–257. Plaintiff's eleventh cause of action alleges a claim for violation of the Americans with Disabilities Act against MSG. *Id.* ¶¶ 258–272. Plaintiff's twelfth cause of action alleges a claim for disability discrimination under Section 296 of the NYSHRL against MSG. *Id.* ¶¶ 273–287. Plaintiff's thirteenth cause of action alleges a claim for aiding and abetting disability discrimination under Section 296(6) of the NYSHRL against the Individual Defendants. *Id.* ¶¶ 288–302. Plaintiff's fourteenth cause of action alleges a claim for disability discrimination under Section 8-107(1) of the NYCHRL. *Id.* ¶¶ 303–317. Plaintiff's fifteenth cause of action alleges a claim for aiding and abetting disability discrimination under Section 8-107(6) of the NYCHRL against the Individual Defendants. *Id.* ¶¶ 318–332.[3]

## I. Subject Matter Jurisdiction

Defendants' notice of motion states that Federal Rule of Civil Procedure 12(b)(1) provides a basis for dismissal, Dkt. No. 42 at 1, but neither of Defendants' briefs in support of the motion to dismiss states an argument as to why the Court lacks subject matter jurisdiction, Dkt. Nos. 43, 48. Plaintiff alleges Defendants violated the Americans with Disabilities Act of 1990, 42 U.S.C. § 12112 *et seq.* AC ¶¶ 258–272. Defendants do not move to dismiss that cause of action. Dkt. Nos. 42–43, 48. The Court therefore has federal question jurisdiction as well as supplemental jurisdiction over the New York state and city law claims that form part of the same case or controversy. 28 U.S.C. §§ 1331, 1367; *see Marseille v. Mount Sinai Health Sys., Inc.*, 2021 WL 3475620, at *4 n.5 (S.D.N.Y. Aug. 5, 2021), *aff'd sub nom. Marseille v. Mount Sinai Hosp.*, 2022 WL 14700981 (2d Cir. Oct. 26, 2022).

---

[3] Plaintiff does not oppose dismissal of Plaintiff's second and fifth causes of action which allege public accommodation discrimination and Plaintiff's tenth cause of action alleging negligence and gross negligence and those claims are therefore deemed abandoned. *See Jackson v. Fed. Exp.*, 766 F.3d 189, 195 (2d Cir. 2014).

**II.  Defendants' Motion to Dismiss the First Cause of Action for Prior Criminal Conviction Discrimination Under the NYSHRL**

In his first cause of action, Plaintiff alleges that MSG violated Section 296(15) of the NYSHRL and unlawfully discriminated against him by wrongfully terminating his employment solely on the basis of his criminal record and without any good faith non-discriminatory reason. Dkt. No. 51 ¶ 227–228.

Defendants argue that Plaintiff fails to state a claim for employment discrimination based on his prior criminal conviction because he does not allege facts from which it could plausibly be inferred that it was impermissible for Defendants to consider Plaintiff's prior conviction in denying him employment.  Dkt. No. 43 at 3.  Defendants argue that even if MSG considered Plaintiff's criminal conviction in terminating his employment, it was permissible for MSG to do so because Plaintiff is a designated Level 3 violent sex offender.  *Id.*  They assert that it would have been permissible for MSG to terminate Plaintiff's employment based on his criminal record because (1) there is a direct relationship between the crime and the position he held with MSG; and (2) Plaintiff would pose an unreasonable risk to specific individuals or the general public.  *Id.* at 3, 12–13.

A. **Legal Standard**

Section 296(15) of the NYSHRL makes it unlawful to deny employment to an individual "by reason of his or her having been convicted of one or more criminal offenses . . . when such denial is in violation of the provisions of article twenty-three-A of the [New York] correction law." Where, as here, a plaintiff alleges "employment discrimination based wholly upon circumstantial evidence, the Court applies the well[-]recognized burden-shifting paradigm articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)."  *Clemons v. WellPoint Cos., Inc.*, 2013 WL 1092101, at *12 (N.D.N.Y. Mar. 15, 2013) (applying framework to claim for violation of

Section 296(15) of the NYSHRL); *see also Franklin v. Whole Foods Mkt. Grp., Inc.*, 2022 WL 256460, at *4 (S.D.N.Y. Jan. 26, 2022) ("Courts apply this framework to NYSHRL criminal history discrimination claims even though criminal history is not a protected category under Title VII."). A "minimal" prima facie case of employment discrimination requires a showing of (i) membership in a protected class, (ii) qualification for the position, (iii) an adverse employment action, and (iv) circumstances giving rise to an inference of discrimination. *See Obabueki v. Int'l Bus. Machs. Corp.*, 145 F. Supp. 2d 371, 380 (S.D.N.Y. 2001) (citing *James v. N.Y. Racing Assoc.*, 233 F.3d 149 (2d Cir. 2000)), *aff'd*, 319 F.3d 87 (2d Cir. 2003). After a plaintiff makes this prima facie showing, "it is then the defendant's burden to proffer a legitimate non-discriminatory reason for its actions; the final and ultimate burden is on the plaintiff to establish that the defendant's reason is in fact pretext for unlawful discrimination." *Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 251 (2d Cir. 2014).

"To survive a motion to dismiss, however, a plaintiff need only plead facts sufficient to establish a prima facie case." *Franklin*, 2022 WL 256460, at *4 (citing *Menaker v. Hofstra Univ.*, 935 F.3d 20, 30 (2d Cir. 2019). "The second and third steps of the McDonnell Douglas framework are not considered on a motion to dismiss and are more appropriately considered on a motion for summary judgment or at trial." *Id.* (citing *Menaker*, 935 F.3d at 30); *see also Yan v. Ziba Mode Inc.*, 2016 WL 1276456, at *3 (S.D.N.Y. Mar. 29, 2016) (Sullivan, J.) ("While a discrimination complaint need not allege facts establishing each element of a prima facie case of discrimination under McDonnell Douglas to survive a motion to dismiss, it must at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible to proceed, and courts within the Second Circuit often use the prima facie case's elements

as an outline of what is necessary to render a plaintiff's employment discrimination claims for relief plausible." (citations and punctuation omitted)).

Article 23-A of the New York Correction Law provides that no employment or application for employment "shall be denied or acted upon adversely by reason of the individual's having been previously convicted of one or more criminal offenses" unless one of two exceptions applies: "(1) there is a direct relationship between one or more of the previous criminal offenses and the specific . . . employment sought or held by the individual; or (2) . . . the granting or continuation of the employment would involve an unreasonable risk to property or to the safety or welfare of specific individuals or the general public."  N.Y. Correct. Law § 752.  A "'[d]irect relationship' means that the nature of criminal conduct for which the person was convicted has a direct bearing on his fitness or ability to perform one or more of the duties or responsibilities necessarily related to the . . . opportunity[] or job in question."  N.Y. Correct. Law § 750(3).  "[T]he 'unreasonable risk' analysis under the second exception is a subjective one."  *Acosta v. N.Y.C. Dep't of Educ.*, 946 N.E.2d 731, 731 (N.Y. 2011); *see Matter of Bonacorsa v. Van Lindt*, 523 N.E.2d 806, 809 (N.Y. 1988).  Section 753(1) of the Correction Law provides that, "[i]n making a determination" as to whether either the "direct relationship" exception or the "unreasonable risk" exception applies, "the public agency or private employer shall consider" the following eight factors:

(a) The public policy of this state, as expressed in this act, to encourage the licensure and employment of persons previously convicted of one or more criminal offenses.

(b) The specific duties and responsibilities necessarily related to the license or employment sought or held by the person.

(c) The bearing, if any, the criminal offense or offenses for which the person was previously convicted will have on his fitness or ability to perform one or more such duties or responsibilities.

(d) The time which has elapsed since the occurrence of the criminal offense or offenses.

(e) The age of the person at the time of occurrence of the criminal offense or offenses.

(f) The seriousness of the offense or offenses.

(g) Any information produced by the person, or produced on his behalf, in regard to his rehabilitation and good conduct.

(h) The legitimate interest of the public agency or private employer in protecting property, and the safety and welfare of specific individuals or the general public.

The human rights and correction laws were enacted not only in support of New York's "strong and important public policy against discrimination," *N.Y. Inst. of Tech. v. State Div. of Hum. Rts.*, 353 N.E.2d 598, 603 (N.Y. 1976), but also to "further certain goals that the [New York State] Legislature has identified as among the 'general purposes' of the Penal Law, namely, 'the rehabilitation of those convicted' and 'the promotion of their successful and productive reentry and reintegration into society,'" *Acosta*, 946 N.E.2d at 731 (quoting N.Y. Penal Law § 1.05(6))).

Section 296(15) of the NYSHRL was enacted in July 1976, in the wake of the uprising that occurred at the Attica Correctional Facility less than five years earlier. *See* The Official Report of the New York State Special Commission on Attica (1972) ("Attica Report"); 1976 N.Y. Sess. Laws 2458 (McKinney). The uprising included a presentation of demands by the inmates and ended when the State's violent efforts to retake the facility resulted in the deaths of twenty-nine inmates and ten hostages as well as serious injury to numerous others. Attica Report at 473; *Inmates of Attica Corr. Facility v. Rockefeller*, 453 F.2d 12, 15 (2d Cir. 1971). The events at Attica led to a serious reexamination of the criminal justice system in New York and nationwide and shone a new light on the oft-ignored plight of inmates and formerly incarcerated individuals. *See, e.g.*, Alvin J. Bronstein & Jenni Gainsborough, *Using International Human Rights Laws and Standards for U.S. Prison Reform*, 24 Pace L. Rev. 811, 812 (2004) ("The prisoner rebellion and its aftermath at Attica . . . served as an opening into the dark world of America's prisons and

became the catalyst for the development of the modern prisoners' rights movement."). The Special Commission on Attica created by the New York State Legislature to investigate the causes and true events of both the uprising and the response thereto concluded that New York's prison system was falling dramatically short of its rehabilitative aims:

> We Americans have made our prisons disappear from sight as if by an act of will. We locate them mostly in places remote from view, and far removed from the homes of the inmates; we emphasize security almost to the exclusion of rehabilitation; and we manage to forget inmates and custodians alike by pretending that the prisoners will not return to our cities and our villages and our farms.

Attica Report at xii; *see also* Roger Wilkins, *Since Attica, the Significant Changes Have Been Rhetorical*, N.Y. Times, Apr. 20, 1975 at 147 (quoting statement in the Department of Corrections Services' master plan that "[i]nstitutionalization is a debilitating disease from which many offenders never fully recover."). The Special Commission on Attica further identified the difficulties that many paroled inmates faced in attempting to obtain post-release employment. Attica Report at 98–99. Indeed, the Attica Report highlighted a familiar phenomenon, noting that "[s]ometimes a job offer is withdrawn after the parole officer informs the prospective employer of the inmate's record or personal history." *Id.* The Special Commission recommended that to ameliorate many of the justice system's failings, New York should take steps to refocus the criminal justice system's focus on rehabilitation and reintegration: "If prisoners are to learn to bear the responsibilities of citizens, they must have all the rights of other citizens except those that have been specifically taken away by court order . . . [and] [w]hen released from prison, they should not be saddled with legal disabilities which prevent them from exercising the rights of free men." Attica Report at xvi–xvii.

The anti-discrimination statute followed. It is intended to relieve some of those barriers to rehabilitation and reintegration. *See Griffin v. Sirva, Inc.*, 76 N.E.3d 1063, 1071 (N.Y. 2017) (Wilson, J., dissenting) (Section 296(15) of the NYSHRL is "intended to facilitate the obtainment

of employment for ex-offenders and to aid their rehabilitation by eliminating many of the obstacles to employment." (citation omitted)). Governor Hugh L. Carey's memorandum approving the amendment adding Section 296(15) to the NYSHRL noted that "[t]he great expense and time involved in successfully prosecuting and incarcerating the criminal offender is largely wasted if upon the individual's return to society his willingness to assume a law-abiding and productive role is frustrated by senseless discrimination." Governor's Approval Mem., Bill Jacket, L. 1976, ch. 931; 1976 N.Y. Sess. Laws 2459 (McKinney); *Acosta*, 16 N.Y.3d at 314–15. Governor Carey's memorandum concluded: "Providing a former offender a fair opportunity for a job is a matter of basic human fairness, as well as one of the surest ways to reduce crime." Governor's Approval Mem., Bill Jacket, L. 1976, ch. 931; 1976 N.Y. Sess. Laws 2459 (McKinney); *see Acosta*, 16 N.Y.3d at 314–15.

These principles have endured. New York has taken further legislative and executive actions to support rehabilitation and reintegration by reducing employment discrimination. In 2017, New York became "the first state in the nation to launch an employer pledge to hire more persons with criminal records and to help turn them into productive citizens." *Tinsley v. Taxi & Limousine Comm'n*, 62 N.Y.S.3d 769, 778 (N.Y. Sup. Ct. 2017); *see Work for Success Employer Pledge*, https://www.ny.gov/programs/work-success-employer-pledge. And, on November 16, 2023, Governor Hochul signed into law the Clean Slate Act to provide for the automatic sealing of certain misdemeanor and felony convictions to further prevent employment discrimination on the basis of criminal history. N.Y. Crim. Proc. Law § 160.57; *see Governor Hochul Expands Economic Opportunity for New Yorkers, Protects Public Safety by Signing the Clean Slate Act*, https://www.governor.ny.gov/news/governor-hochul-expands-economic-opportunity-new-

yorkers-protects-public-safety-signing-clean.[4]  Local governments including New York City have

passed additional statutes to expand the protective scheme.  *See, e.g.*, NYCHRL § 8-107(11-a) (the

"Fair Chance Act").  The Fair Chance Act went into effect on October 27, 2015 and amended the

NYCHRL to constrain employers' discovery and use of applicants' or employees' criminal

histories, among other employee protections.  *Id.*

In light of New York's longstanding rehabilitative and reintegrative aims, it is clear that a

defendant must do more to justify a termination than merely argue that the terminated employee

was convicted of a serious crime.  Yet many of Defendants' arguments are premised on the notion

that it was permissible for MSG to fire Plaintiff solely because he had been convicted of a crime

that rendered him a sexual offender.

B.     **Application**

The Amended Complaint supports a prima facie case of employment discrimination on the

basis of Plaintiff's criminal history.  To plead the "minimal" prima facie case of employment

discrimination on the basis of criminal conviction, the plaintiff must show (i) plaintiff was

convicted of one or more criminal offenses, (ii) plaintiff was qualified for the position, (iii) plaintiff

was denied employment, and (iv) a minimal inference of defendant's discriminatory intent.  *See*

NYSHRL § 296(15); *James*, 233 F.3d at 153–54 (prima facie case "is satisfied by a showing of

membership in a protected class, qualification for the position, an adverse employment action, and

preference for a person not of the protected class" (citation omitted)); *Obabueki*, 145 F. Supp. 2d

at 380.  The first element is not at issue; Defendants do not dispute that Plaintiff has a prior criminal

conviction.  AC ¶¶ 15, 31; Dkt. Nos. 43, 48.

---

[4] Plaintiff's conviction is one that is ineligible for automatic sealing under the Clean Slate Act.
N.Y. Crim. Proc. Law § 160.57.

### 1.    Qualification for the Position

Plaintiff alleges that he was qualified for the position of usher—an assessment that Defendants at least at one time shared, given that he was hired for the role and allegedly performed the job without incident for approximately eight months. *Id.* ¶¶ 57, 60.[5]  The second factor of the McDonnell Douglas prima facie case "requires only a minimal showing of qualification." *Owens v. N.Y.C.H.A.*, 934 F.2d 405, 409 (2d Cir. 1991).  Plaintiff needs only to allege that he "possesses the basic skills necessary for performance of [the] job." *Powell v. Syracuse Univ.*, 580 F.2d 1150, 1155 (2d Cir.), *cert. denied*, 439 U.S. 984 (1978).

Defendants argue that Plaintiff did not possess the minimal qualification for the job because "he was adjudged by the State of New York to be a Sexually Violent Offender with a 'Level 3' risk level." Dkt. No. 48 at 4.  Defendants argue that ushers are required to assert authority over MSG's guests including minor children and that Plaintiff's classification as a "Level 3 violent sex offender" indicates that "the risk of repeat offense is high and there exists a threat to the public safety." Dkt. No. 43 at 3 (citing N.Y. Correct. Law § 168-l(6)(c)), 13–14 (citing N.Y. Exec. Law § 259-c(14)); Dkt. No. 48 at 4–7.  In support of that argument, Defendants do not focus on the allegations of the Amended Complaint but instead ask the Court to take notice of information and

---

[5] Defendants argue that they were not aware of Plaintiff's purportedly disqualifying conviction at the time of hiring, as the pre-hiring background check did not reveal Plaintiff's criminal history because "Plaintiff represented to the background check company that his birth year was 1966, when his actual birth year is 1963." Dkt. No. 43 at 6 & n.6; Dkt. No. 33-2; Dkt. No. 48 at 8 & n.5; Dkt. No. 49; Dkt. No. 49-1; Dkt. No. 49-2.  However, Defendants do not identify any basis for the Court to take judicial notice of its submissions to that effect and Plaintiff disputes their authenticity. Dkt. No. 44 at 4–5.  "[A] document outside the complaint may not serve as the basis for a dismissal unless it is 'clear on the record that no dispute exists regarding the authenticity or accuracy of the document.'" *MMA Consultants 1, Inc. v. Republic of Peru*, 245 F. Supp. 3d 486, 498–99 (S.D.N.Y. 2006) (quoting *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006)), *aff'd*, 719 F. App'x 47 (2d Cir. 2017).  Regardless, Plaintiff affirmatively pleads that he disclosed his criminal background at the time of hiring and thus it is unclear why an inaccurate birth date would obviate Defendants' awareness of that background.  AC ¶¶ 40, 200, 246.

documents that are neither referred to in the Amended Complaint nor integral to it.  Defendants state "[u]shers at Madison Square Garden are responsible for checking tickets, greeting and escorting patrons to their seats, and serving as a point of contact for any patron concerns and needs, which might include, for example, assisting a child who may get separated from their parents or who is looking for their seat." Dkt. No. 43 at 6.  Defendants add that events at Madison Square Garden regularly attract minor audiences.  Dkt. No. 48 at 5 & nn.1–2.  The Court may not, however, take notice on this motion of Defendants' assertions for their truth.[6]  The existence of events at Madison Square Garden that attract minor audiences and the nature of those audiences raises a question of fact, not a question of law based on the pleadings.

Defendants also ask the Court to take judicial notice of the MSG usher job description.  However, the hyperlink to the job description that Defendants initially provided, Dkt. No. 43 at 6 n.5, did not function for either Plaintiff or for the Court, Dkt. No. 44 at 14 n. 17, Dkt. No. 44-1.  Defendants subsequently provided a purported copy of the job description attached to an attorney declaration submitted alongside the reply memorandum of law in support of the motion to dismiss.  Dkt. Nos. 50, 50-1.  Defendants cite *Jeune v. Crew*, 2017 WL 4357382, at *3 n.7 (E.D.N.Y. Sept. 29, 2017) to argue that "the Court may take judicial notice of such job description, particularly

---

[6] Defendants cite a newspaper article and several public events calendars in support of this claim, but none are judicially noticeable for the truth of their contents.  *See Cosgrove v. Or. Chai, Inc.*, 520 F. Supp. 3d 562, 581 n.5 (S.D.N.Y. 2021).  For example, Defendants cite a posting on MSG's website that stated MSG planned to host an event titled "PAW Patrol Live! The Great Pirate Adventure."  There is case law that "a court may take judicial notice on a motion to dismiss of information publicly announced on a party's website as long as the website's authenticity is not in dispute and it is capable of accurate and ready determination."  *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 463 (S.D.N.Y. 2020) (Nathan, J.) (quoting *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 167 (S.D.N.Y. 2015)).  That proposition is not disputed on this motion.  However, even if notice could be taken that Defendants posted MSG events on the website, the website information may be considered "only for 'determining what the documents state'" and not "to 'prove the truth of their contents.'" *Id.* (quoting *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)).

where Plaintiff fails to plead such description." Dkt. No. 48 at 6–7.    In *Jeune*, the Court took

judicial notice of a civil service position description that was available online, relying on case law

that in deciding a motion to dismiss courts may look to public records.  *See Jeune*, 2017 WL

4357382, at *3 n.7 (citing *Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts

Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004)); *see also Vill. Green At Sayville, LLC v. Town

of Islip*, 43 F.4th 287, 299 (2d Cir. 2022) (courts take "routine" judicial notice of "documents

retrieved from official government websites"); *e.g.*, *Lefebvre v. Morgan*, 2016 WL 1274584, at

*13 n.17 (S.D.N.Y. Mar. 31, 2016) (taking judicial notice of the New York State Department of

Civil Service website to determine how certain positions were classified).  It is not apparent that

such rule would also extend to postings of non-governmental information by a private company.

Indeed, the job description Defendants submitted is neither a public record nor a website of any

kind.  The attorney declaration states merely that the document "is a true and correct copy of the

job description for the usher position at Madison Square Garden maintained by Madison Square

Garden for the purpose of memorializing the role summary, specific functions, and qualifications

of the usher position." Dkt. No. 50.[7]  There is no indication that the provided description has ever

been posted online or made publicly available.[8]  In sum, the document evidencing the MSG usher

job description is not a public document susceptible to judicial notice on a motion to dismiss

---

[7] The attorney declaration also does not state that the document describes the usher position as it
was at the time Plaintiff held the role as opposed to a more recent description that could reflect
post hoc edits made to justify Plaintiff's termination.  *Id.*
[8] Even if the job description was publicly announced on MSG's website, and the website's
authenticity was not in dispute, *see Doron Precision Sys., Inc. v. FAAC, Inc.*, 423 F. Supp. 2d 173,
179 (S.D.N.Y. 2006), the Court's consideration would be limited to assessing what MSG stated
the requirements of the usher position were—not what the requirements of the job *actually*
entailed, *see Grecco v. Age Fotostock Am., Inc.*, 2021 WL 3353926, at *3 (S.D.N.Y. Aug. 2, 2021)
("the purpose of taking judicial notice of a website's contents is to determine 'what the documents
state' and 'not to prove the truth of their contents.'" (quoting *Roth*, 489 F.3d at 509)).

pursuant to Fed. R. Evid. 201 and Fed. R. Civ. P. 12(b)(6).  *See* 1 Weinstein's Federal Evidence § 201.03 (2024) ("To qualify for judicial notice an adjudicative fact must be either (1) generally known within the trial court's territorial jurisdiction; [or] (2) accurately and readily determined from sources whose accuracy cannot reasonably be questioned." (citations omitted)).

Ultimately, even if the Court were to consider the provided job description, the description does not provide a basis from which to infer that Plaintiff was inherently unqualified for the role. At the outset, the Second Circuit has stated "it is clear that the job content and not job title or description is the standard for determining whether there was a violation of the anti-discrimination laws." *Chepak v. Metro. Hosp.*, 555 F. App'x 74, 77 (2d Cir. 2014) (citing *Marshall v. Building Maint. Corp.*, 587 F.2d 567, 571 (2d Cir.1978)); *see id.* ("Even if the job descriptions were properly considered in reviewing defendant's motion [to dismiss], the job descriptions at most raise issues of fact, and do not, by themselves, provide a basis for dismissing [plaintiff's] claims.").

The job description contains generic required attributes "to succeed" including "Ability to work in a crowded, fast-paced environment; calm under pressure;" "Strong interpersonal and communication skills;" and "Energetic and enthusiastic.  Dkt. No. 50-1.  Ushers must obtain an E.A.M alcohol management certification and join the union, *id.*, but Defendants do not allege that Plaintiff's criminal history made him ineligible for the certification or union membership.  The remainder of the listed job requirements pertain to physical abilities (e.g., "Must be able to traverse steps and be able to walk and stand long periods of time") and scheduling (e.g., "Flexibility to work including nights, weekends, holidays, split shifts, in a 24 X 7 environment").  *Id.*  Defendants do not argue that Plaintiff is not qualified for these generic requirements and responsibilities.  The job description does not contain any mention of work with children or specific child-minding

requirement from which sex offenders might be precluded.[9]  Therefore, even if the Court were to accept that the requirements as stated in the job description applied to Plaintiff, Plaintiff has alleged that he has "the basic skills necessary for performance of [the] job," *Powell*, 580 F.2d at 1155, and that Plaintiff performed the role in accordance with MSG's criteria for satisfactory performance, *see Thornley v. Penton Pub., Inc.*, 104 F.3d 26, 30 (2d Cir. 1997).  AC ¶¶ 57–60.

Defendants are essentially asking the Court to decide as a matter of law that a Level 3 sex offender is unqualified to perform any role in which the offender may have "authority" over the public including minor children.  Dkt. No. 43 at 3, 13–14.  Defendants' argument could preclude individuals convicted of sex offenses from obtaining positions in such common industries as retail, food service, or delivery.  The New York Legislature has already identified jobs which entail unique exposure to children and certain sex offenders may not possess.  *E.g.*, NYS Vehicle & Traffic Law §§ 509-cc(4)(a) &(4)(b) (school bus operator); N.Y. Correct. Law § 168-v (ice cream truck operator); N.Y. Exec. Law § 259-c (jobs on or certain distance from school grounds).[10] Absent legislative action, there is no basis for the Court to add usher to that list as a categorical matter.

---

[9] Defendants argue that, as a condition of Plaintiff's parole, he is "required to avoid contact with and exposure to minors."  Dkt. No. 43 at 14 (citing N.Y. Exec. Law § 259-c(14)).  This argument misrepresents the law.  The cited provision states only that Level 3 sex offenders such as Plaintiff "shall refrain from knowingly entering into or upon any school grounds . . . or any other facility or institution primarily used for the care or treatment of persons under the age of eighteen."  N.Y. Exec. Law § 259-c(14).  Defendants do not argue that MSG is a school or that it is "primarily used" for the care or treatment of minors.

[10] *See also People ex rel. Rivera v. Superintendent, Woodbourne Corr. Facility*, 221 N.E.3d 1, 10 (N.Y. 2023) ("[T]he school grounds condition bears some resemblance to the historical punishment of banishment" as the offender "must tailor much of their lives around these restricted zones, forced to forego certain employment and housing opportunities." (citation omitted)).

###### 2.    Denial of Employment

Plaintiff alleges denial of employment in the form of his termination.  AC ¶¶ 60, 134, 139, 146.  Section 296(15) is unlike many other anti-discrimination provisions of the NYSHRL in that prohibits fewer types of adverse employment actions.  *Compare* NYSHRL § 296(15) (it is an unlawful discriminatory practice for an employer "to deny any license or employment to any individual by reason of his or her having been convicted of one or more criminal offenses") *with* NYSHRL § 296(1) (it is an unlawful discriminatory practice for an employer "to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment" on the basis of the individual's "age, race, creed, color, national origin, citizenship or immigration status, sexual orientation, gender identity or expression, military status, sex, disability, predisposing genetic characteristics, familial status, marital status, or status as a victim of domestic violence") *and* NYSHRL § 296(10)(a) (it is an unlawful discriminatory practice for an employer "to impose upon a person as a condition of obtaining or retaining employment, including opportunities for promotion, advancement or transfers, any terms or conditions that would require such person to violate or forego a sincerely held practice of his or her religion").  Here, Plaintiff has alleged that he was denied employment, and the third element is thus satisfied. *See Clemons*, 2013 WL 1092101, at *13 (adverse employment action adequately pled for prior-conviction-discrimination claim where plaintiff was discharged from her employment).

The Step 1 Grievance Hearing does not constitute a separate denial of employment.  A post-termination grievance hearing's affirmatory decision does not alter the grievant's employment status.  That is, an employee that has been terminated is still terminated—not any more so.  *See McAllister v. Queens Borough Pub. Libr.*, 2007 WL 9724345, at *1 (E.D.N.Y. May 29, 2007) (denying retaliation claim based on employer's conduct at a grievance hearing because

"[t]here is no adverse employment action; plaintiff was already terminated"), *aff'd*, 309 F. App'x 457 (2d Cir. 2009); *Salaam v. Syracuse Model Neighborhood Facility*, 2012 WL 893487, at *5 (N.D.N.Y. Mar. 15, 2012) ("Plaintiff claims that she was not provided a grievance hearing and that she was not provided with a letter detailing the specific reasons for her termination. This conduct, however, does not qualify as an actionable adverse employment action for purposes of Plaintiff's discrimination claims." (citations and punctuation omitted)).[11] And filing a grievance should not be viewed as an application for reemployment. The New York Court of Appeals has expressed that "[e]mployment applications may take various forms in different contexts depending on, among other things, the nature of the relevant industry, the manner in which new employees are solicited or open positions advertised, application protocols implemented by the employer, and the relationship, if any, between a prospective employer and employee." *Sassi v. Mobile Life Support Servs., Inc.*, 175 N.E.3d 1246, 1249 (N.Y. 2021). The question is whether "viewed in context and from an objective standpoint, the employer would have reasonably understood the communications from the prospective employee to be a request for employment . . . and not merely that there was protest of a termination decision." *Id.* at 1249–50. The Amended Complaint does not contain factual allegations indicating that Plaintiff's grievance could be construed as an application for employment. Therefore, the only actionable denial of employment Plaintiff alleges is his termination.

---

[11] This is not to say that employees deprived of effective grievance procedures are without recourse. As the Supreme Court has recognized, where "the conduct of the employer amounts to a repudiation of those contractual procedures," the "employee may obtain judicial review of his breach-of-contract claim." *Vaca v. Sipes*, 386 U.S. 171, 185 (1967). Suits for breach of a collective bargaining agreement must be conducted pursuant to the Labor Management Relations Act (the "LMRA"). *See Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985).

### 3.    Minimal Inference of Defendants' Discriminatory Intent

Plaintiff has alleged circumstances from which the Court may infer that the termination was motivated by Plaintiff's criminal history. "At the motion to dismiss stage, a plaintiff 'need only give plausible support to a minimal inference of discriminatory motivation.'" *Wallace v. Crab House, Inc.*, 2022 WL 1501089, at *3 (S.D.N.Y. May 12, 2022) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 310 (2d Cir. 2015)); *see also Littlejohn*, 795 F.3d at 310 (noting the relationship between the McDonnell Douglas burden-shifting framework and the pleading standard in *Iqbal* and concluding that "[t]o the same extent that the McDonnell Douglas [framework] . . . reduces the facts a plaintiff would need to *show* to defeat a motion for summary judgment prior to the defendant's furnishing of a non-discriminatory motivation, that presumption also reduces the facts needed to be *pleaded* under *Iqbal*"). The Amended Complaint supports the inference that Defendants knew that Plaintiff was a registered sex offender at the time his employment was terminated. Plaintiff alleges that his employment immediately took a discriminatory turn for the worse after his parole officer contacted MSG to verify his employment and discussed Plaintiff's conviction and the need for verification of employment with Defendants. AC ¶¶ 79–84. Before the parole officer informed MSG of Plaintiff's conviction, Plaintiff was gainfully employed by MSG and had held the usher position for over half a year. A mere day after MSG was informed of the conviction, Defendants created a posting that Plaintiff was a "registered sexually violent offender with a high-risk level" for whom individuals at MSG should "Be On the Look Out," *id.* ¶¶ 95–96, and then terminated Plaintiff one business day later, *id.* ¶ 134. Thereafter, MSG gave explanations that could be viewed as pretextual, stating that the reason for the termination was Plaintiff's violation of a directive he had received many months prior and for which he had never received any warning or notice. *Id.* ¶¶ 65, 72, 134, 138–139, 143–145. These

factual allegations are sufficient to raise an inference that Defendants acted with a discriminatory motivation.

Defendants argue that to allege a minimal inference of discriminatory intent under Section 296(15) of NYSHRL, Plaintiff must adequately allege facts from which the Court can infer that neither the direct relationship exception nor the unreasonable risk exception applies to him. Dkt. No. 43 at 11, 14 (citing *Franklin*, 2022 WL 256460, at *5; Dkt. No. 48 at 2–3 (same).  In effect, Defendants would give the employer freedom to fire an employee so long as the employer believes, without further consideration, that one of those two exceptions applies.  But that approach presumes that a person with a prior criminal conviction is inherently less employable than a person without and must prove their fitness for the position in a manner that an applicant or employee without such a conviction need not.  Such an approach does not comport with the purpose of the statute to prohibit discrimination and to promote the successful reintegration and employment of individuals with prior convictions.  As the New York Court of Appeals has stated, because "barring discrimination against those who have paid their debt to society and facilitating their efforts to obtain gainful employment benefits the community as a whole," the New York Legislature determined that "[t]he 'direct relationship' exception and the 'unreasonable risk' exception to this general rule may be resorted to *only upon a consideration of each of the eight factors* enumerated in Correction Law § 753."  *Acosta*, 946 N.E.2d at 736 (emphasis added) (citing *Arrocha v. Bd. of Educ. of City of N. Y.*, 712 N.E.2d 669 (N.Y. 1999)).

Defendants' approach is also at odds with the text of the anti-discrimination statute, which prohibits denial of employment "in violation of the provisions of article twenty-three-A of the correction law."  NYSHRL § 296(15).  Within Article 23-A of the New York Correction Law, Section 753 mandates that "in making a determination" as to whether the direct relationship

exception or the unreasonable risk exception applies to a candidate, "the public agency or private employer *shall* consider the following factors. . . ."   N.Y. Correct. Law § 753(1) (emphasis added).[12]   "The word 'shall,' in a statute, indicates a command; what follows the word 'shall' is 'mandatory, not precatory.'" *United States v. Kahn*, 5 F.4th 167, 174 (2d Cir. 2021) (quoting *Mach Mining, LLC v. EEOC*, 575 U.S. 480, 486 (2015)); *see also People v. Ricken*, 287 N.Y.S.2d 118, 119 (3d Dep't 1968) ("[I]n the absence of ameliorating or qualifying language or showing of another purpose, the word 'shall' is deemed to be mandatory." (citation omitted)), *aff'd*, 266 N.E.2d 821 (N.Y. 1970).   Therefore, "[u]nder either exception, 'the public agency or private employer' *must* consider the eight listed factors."  *Griffin*, 76 N.E.3d at 1067 (emphasis added)

---

[12] Section 753(1) of the Correction Law states in full:

> In making a determination pursuant to section seven hundred fifty-two of this chapter, the public agency or private employer shall consider the following factors:
>
> (a) The public policy of this state, as expressed in this act, to encourage the licensure and employment of persons previously convicted of one or more criminal offenses.
>
> (b) The specific duties and responsibilities necessarily related to the license or employment sought or held by the person.
>
> (c) The bearing, if any, the criminal offense or offenses for which the person was previously convicted will have on his fitness or ability to perform one or more such duties or responsibilities.
>
> (d) The time which has elapsed since the occurrence of the criminal offense or offenses.
>
> (e) The age of the person at the time of occurrence of the criminal offense or offenses.
>
> (f) The seriousness of the offense or offenses.
>
> (g) Any information produced by the person, or produced on his behalf, in regard to his rehabilitation and good conduct.
>
> (h) The legitimate interest of the public agency or private employer in protecting property, and the safety and welfare of specific individuals or the general public.

(citing N.Y. Correct. Law § 753).  Defendants' approach would dispense with the requirement that the employer consider the statutory factors, giving the employer leeway to terminate the employment of an ex-convict who is deemed to be a risk, regardless whether the employer has engaged in the necessary analysis to support that conclusion.  All formerly incarcerated persons—even those convicted of serious crimes—are entitled to have their employers consider the Section 753 factors before terminating an employment relationship.

Therefore, to plead the minimal inference of discriminatory intent (i.e., that an employer denied employment on the basis of an employee's prior criminal conviction "in violation of the provisions of article twenty-three-A of the [New York] correction law"), it is sufficient for an employee to allege facts sufficient to infer that (a) the prior conviction was the basis for the denial, and (b) either (i) neither the direct relationship exception nor the unreasonable risk exception apply to him, *see Franklin*, 2022 WL 256460, at *5 ("[B]ecause Franklin has adequately alleged that neither of the Article 23-A exceptions apply, he has adequately alleged facts from which the Court can infer a minimal inference of discriminatory motivation."); *Schwarz v Consol. Edison, Inc.*, 13 N.Y.S.3d 884, 888 (N.Y. Sup. Ct. 2015) (finding an inference of discrimination where the alleged facts "do not fall into any of the two exceptions under the" New York Correction Law); *Pickering v. Uptown Commc'ns & Elec. Inc.*, 983 N.Y.S.2d 205, 205 (N.Y. Sup. Ct. 2013) (Table) (denying summary judgment where there were material issues of fact as to the veracity of defendants' argument that "as a result of his criminal convictions, plaintiff may pose a safety risk to [defendants'] customers when he goes into their homes"), or (ii) the employer did not actually consider the factors enumerated in Section 753 of the Correction Law before making its decision, *see Franklin*, 2022 WL 256460, at *6 n.13 ("Franklin's allegations that Defendants did not follow the required statutory procedures in their hiring process further supports the conclusion that

Franklin has adequately alleged an inference of discrimination."); *Acosta*, 946 N.E.2d at 733 ("A failure to take into consideration each of the[] factors results in a failure to comply with the Correction Law's mandatory directive." (citation omitted)).  Absent the required analysis of the Section 753 factors, the employer runs afoul of the NYSHRL and may be liable for employment discrimination.  *E.g.*, *Tinsley*, 62 N.Y.S.3d at 776 (administrative review of Taxi and Limousine Commission's decision to deny petitioner's application for a taxi license on the basis of petitioner's prior conviction was arbitrary and capricious because the administrative law judge "failed properly to apply, weigh, and balance the eight factors contained in Correction Law section 753(1)").

Here, the Amended Complaint does not support, but rather contradicts, the notion that Defendants reached the decision to terminate Plaintiff's employment after a considered determination either that the nature of Plaintiff's criminal conduct had a direct bearing on his fitness and ability to perform his job or that he posed an unreasonable risk to the safety or welfare of specific individuals or the general public.[13]  From the Amended Complaint, it is apparent that Defendants' decision was precipitous.  The allegations support the claim that Defendants did not consider the Section 753 factors. Defendants spoke with Plaintiff's parole officer on Friday, August 5, 2022.  AC ¶¶ 80–81.  Within a day, MSG circulated the posting that Plaintiff was "a registered sexually violent offender with a high-risk level."  *Id.* ¶¶ 84–96.  On Monday, August 8, 2022, the next business day after Defendants' conversation with the parole officer, Plaintiff was informed that his employment was being terminated.  *Id.* ¶ 134.  Plaintiff further alleges that, upon commencing his employment and after undergoing a background check, he was never told that there was any problem with the background check or given the notice required by New York State

---

[13] Plaintiff affirmatively alleges that Defendants failed to undertake the analysis required by the New York Correction Law.  AC ¶¶ 12, 169, 297.

Correction Law Article 23-A and the New York City Fair Chance Act that his employment application was being rejected due to his criminal background. *Id.* ¶¶ 46–48, 199, 205–211.[14] And, most tellingly, he alleges that Defendants did not contend at the time his employment was terminated, that he was terminated because of that criminal history but rather that the termination was based on the pretextual grounds that Plaintiff had disregarded Jennings' directive to cease visiting the staffing office for assistance. AC ¶¶ 14, 138–139, 188. Putting those facts together, it is plausible that Defendants—after being informed of Plaintiff's conviction—never considered whether that conviction presented any conflict with his position as an usher at MSG or created any risk to specific individuals or to the general public and that the explanations Defendants have now provided were contrived after the fact to support a decision that had already been made and announced. Plaintiff plausibly alleges that MSG terminated his employment without engaging in the analysis required under Article 23-A and sufficiently alleges the termination was motivated by Defendants' discriminatory intent rather than permissible operation within the law.

Ultimately, Defendants' argument presupposes that an employer need not contemporaneously undertake the analysis required by Section 753 of the Correction Law if it is later apparent that such analysis, if it had been undertaken contemporaneously, would have justified the termination. Dkt. No. 43 at 10–16; Dkt. No. 48 at 4–7. That argument resembles the "after-acquired" evidence argument rejected as applied to the federal antidiscrimination laws in

---

[14] Article 23-A requires that "[a]t the request of any person previously convicted of one or more criminal offenses who has been denied a license or employment, a public agency or private employer shall provide, within thirty days of a request, a written statement setting forth the reasons for such denial." N.Y. Correct. Law § 754. Defendants argue that Plaintiff fails to allege that he requested a written statement. Dkt. No. 43 at 11 n.9. But Plaintiff does plead that after he was terminated, he and his union representative had "asked for the information" regarding the reason for his termination "several times." AC ¶¶ 189–190. Plaintiff also adequately alleges Defendants failed to provide such information in violation of New York City's Fair Chance Act, *see infra*.

*McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352 (1995).  "As has been observed, 'proving that the same decision would have been justified . . . is not the same as proving that the same decision would have been made.'"  *Id.* at 360 (quoting *Price Waterhouse v. Hopkins*, 490 U.S. 228, 252 (1989) (plurality opinion)).  Such evidence goes to remedial relief and whether "reinstatement [or] front pay is an appropriate remedy."  *Id.* at 361–62.  It does not eliminate the claim itself.  *See Baldwin v. Cablevision Sys. Corp.*, 888 N.Y.S.2d 1, 6–7 (1st Dep't 2009) (after-acquired evidence "is not a bar to litigation and does not warrant summary judgment, but only affects the plaintiff's damages if and when the employer is found liable").  Defendants may not deny employment in violation of the requirements set forth by the state and city human rights laws and cross their fingers hoping that a post hoc review will retroactively justify their decision on nondiscriminatory grounds.  Such a knee-jerk reaction is discrimination manifest.  An approach that allows defendants to discriminate first and justify later runs counter to the text and anti-discrimination aims of Section 296(15) of the NYSHRL.

*          *          *

Having made out a prima facie case of employment discrimination, Plaintiff has adequately alleged a violation of Section 296(15) of the NYSHRL.  Defendants' motion to dismiss Plaintiff's first cause of action is therefore denied.

### III. Defendants' Motion to Dismiss the Fourth Cause of Action for Prior Criminal Conviction Discrimination Under the NYCHRL

Plaintiff's fourth cause of action alleges that MSG violated Section 8-107(10) of the NYCHRL and unlawfully discriminated against him by wrongfully terminating his employment on the sole basis of his criminal record and without any good faith non-discriminatory reason for the actions.  *Id.* ¶¶ 261–262.

Section 8-107(10)(a) of the NYCHRL provides in language similar to Section 296(15) of the NYSHRL that it is unlawful to deny employment to any person "by reason of his or her having been convicted of one or more criminal offenses . . . when such denial is in violation of the provisions of article twenty-three-a of the [New York] correction law." *See Millien v. Madison Square Garden Co.*, 2020 WL 4572678, at *2 (S.D.N.Y. Aug. 7, 2020) (Nathan, J.). NYCHRL discrimination claims may not simply be evaluated coextensively with NYSHRL claims under the McDonnell Douglas burden-shifting framework because the Local Civil Rights Restoration Act of 2005 clarified that the NYCHRL "shall be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York State civil and human rights laws, including those laws with provisions comparably-worded to provisions of this title, have been so construed." N.Y.C. Loc. Law No. 85 § 1 (2005). The NYSHRL therefore acts not as a mirror to NYCHRL but "as a floor below which the [NYCHRL] cannot fall." *Id.*; *see Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009).

Because Plaintiff states a claim pursuant to the NYSHRL and the NYCHRL uses the same framework as the NYSHRL, "but contains, as to some elements, more liberal pleading and proof standards," *Farmer v. Shake Shack Enters.*, 473 F. Supp. 3d 309, 327 (S.D.N.Y. 2020), Plaintiff has also adequately alleged a violation of Section 8-107(10)(a) of the NYCHRL *Franklin*, 2022 WL 256460, at *8.

Plaintiff has additionally stated a violation of a separate provision of the NYCHRL: the Fair Chance Act. "The [Fair Chance Act] is intended to level the playing field so that New Yorkers who are part of the approximately 70 million adults residing in the United States who have been arrested or convicted of a crime . . . [are] not overlooked during the hiring process simply because they have to check a box." N.Y.C. Comm'n on Human Rights, Legal Enforcement Guidance on

the Fair Chance Act at 1 (June 24, 2016) (citation omitted).  The Fair Chance Act "amended the NYCHRL to provide additional protection from employment discrimination to individuals with criminal histories" by limiting employers' ability to inquire as to an applicant's criminal history before extending a conditional offer of acceptance, NYCHRL § 8-107(11-a)(a)(3), and provides a procedure that employers seeking to take an adverse employment action against a current employee based on a criminal conviction must follow.  NYCHRL § 8-107(11-a)(c); *see Franklin v. Vertex Glob. Sols., Inc.*, 2022 WL 392913, at *4 (S.D.N.Y. Feb. 9, 2022).  The procedure requires that the employer:

> (1) Request from the employee information relating to the relevant fair chance factors;
>
> (2) Perform an analysis as required by paragraphs (b) and (c) of subdivision 10 of this section;
>
> (3) Provide a written copy of such analysis to the employee in a manner to be determined by the commission, which shall include but not be limited to supporting documents that formed the basis for an adverse action based on such analysis and the employer's or employment agency's reasons for taking any adverse action against such employee; and
>
> (4) After giving the employee the inquiry and analysis in writing, allow the employee a reasonable time to respond before taking adverse action.

*Id*.  The "fair chance factors" referenced in Section 8-107(11-a)(c)(2) of the NYCHRL fully incorporate those laid out in Section 753 of the Correction Law.  *See* NYCHRL § 8-102 ("The term 'relevant fair chance factors' means: . . . [w]ith respect to arrests or convictions preceding employment, . . . the factors set forth in section 753 of the correction law.").

Although Plaintiff does not assert violation of the Fair Chance Act as a separate cause of action, Fed. R. Civ. P. 8(d) provides that "[n]o technical form is required" to state a claim and permits the pleading of multiple claims in a single count.  *See Lindner v. Int'l Bus. Machs. Corp.*, 2008 WL 2461934, at *11 (S.D.N.Y. June 18, 2008) (Sullivan, J).  The Amended Complaint

alleges that Defendants engaged in a per se violation of the Fair Chance Act by failing to solicit information from Plaintiff, undertake the required analysis, provide a copy of the analysis to Plaintiff, or give Plaintiff an opportunity to respond.  AC ¶¶ 199, 205–211.  Defendants do not contest the alleged failures to comply with these procedures.[15]  Plaintiff has therefore adequately pleaded violations of both NYCHRL § 8-107(10) and (11-a)(c).

## IV. Defendants' Motion to Dismiss the Seventh Cause of Action for Violation of the New York Correction Law

In his seventh cause of action, Plaintiff alleges that MSG violated Section 752 of the New York Correction Law by discriminating against him and terminating his employment on the basis of his criminal record without engaging in any analysis to determine whether his criminal conviction was related to his job or created any risk to the property, safety, or welfare of the public. AC ¶ 297.

Defendants argue that there is no private right of action under Section 752 of the Correction Law and that the provision is enforceable against private employers only by the New York State Division of Human Rights and the New York City Commission on Human Rights.  Dkt. No. 43 at 16–17 (citing N.Y. Correct. Law § 755(2)); Dkt. No. 48 at 10 (same).

New York courts apply a three-factor test to determine whether a private right of action should be implied in a statute that does not make express provision for a private remedy.  *See Ortiz v. Ciox Health LLC*, 179 N.E.3d 635, 638 (N.Y. 2021).  The three factors relevant to whether a private right of action should be implied are: "(1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) whether recognition of a private right of action would

---

[15] Defendants focus instead on their alleged compliance with the Fair Chance Act's protections for job applicants, arguing that "Plaintiff admits that in accordance with the New York City Fair Chance Act he was not asked to complete a background check until after he received an offer of employment."  Dkt. No. 48 at 10 n.7 (citing AC ¶¶ 46–47).

promote the legislative purpose; and (3) whether creation of such a right would be consistent with the legislative scheme." *Id.* (citing *Sheehy v. Big Flats Community Day, Inc.*, 541 N.E.2d 18 (N.Y. 1989); *CPC Intl. Inc v. McKesson Corp.*, 514 N.E.2d 116, 119 (N.Y. 1987); *Burns Jackson Miller Summit & Spitzer v. Lindner*, 451 N.E.2d 459, 463 (N.Y. 1983)). "[A]ll three factors must be satisfied before an implied private right of action will be recognized." *Ortiz*, 179 N.E.3d at 639 (quoting *Haar v. Nationwide Mut. Fire Ins. Co.*, 138 N.E.3d 1080, 1084 (N.Y. 2019)).

Section 752 of the Correction Law cannot be construed to contain an implied private right of action in favor of Plaintiff.  Plaintiff undoubtedly is a member of a class of persons for whose particular benefit the statute was enacted.  *See Belardo v. United States*, 2021 WL 4972495, at *2 (E.D.N.Y. Oct. 26, 2021); *Acosta*, 946 N.E.2d at 736.  The statute is intended to remedy discrimination against, and promote employment of, persons previously convicted of one or more criminal offenses.  N.Y. Correct. Law § 752; *Acosta*, 946 N.E.2d at 736.  Although recognition of a private right of action "would, as a general matter, advance the legislative purpose" in preventing discrimination against those with criminal records, *Sheehy*, 541 N.E.2d at 634, there is no indication "in the statute or its legislative history of an intent to create" a private remedy.  *Burns Jackson Miller*, 451 N.E.2d at 463; *see Ortiz*, 179 N.E.3d at 642–44 (Wilson, J., concurring).

Plaintiff's claim founders on the third factor, which "is the most important and typically turns on the legislature's choice to provide one particular enforcement mechanism to the exclusion of others—a choice that should be respected by the courts." *Ortiz*, 179 N.E.3d at 639; *see Sheehy*, 541 N.E.2d at 21 ("[R]egardless of its consistency with the basic legislative goal, a private right of action should not be judicially sanctioned if it is incompatible with the enforcement mechanism chosen by the Legislature or with some other aspect of the over-all statutory scheme."). Section 752 of the Correction Law contains alternative mechanisms of enforcement that

demonstrate that "the legislature considered and decided what avenues of relief were appropriate," and thus precludes the implication of a private right of action. *Ortiz*, 179 N.E.3d at 640. Section 755 of the Correction Law provides that the provisions of Article 23-A of the New York Correction Law shall be enforceable in relation to actions by public agencies pursuant to a proceeding under Article 78 of the New York Civil Practice Law and Rules, and in relation to actions by private employers "by the division of human rights pursuant to the powers and procedures set forth in article fifteen of the executive law, and, concurrently, by the New York city commission on human rights." N.Y. Correct. Law § 755. Moreover, the NYSHRL makes it unlawful to deny employment to an individual "by reason of his having been convicted of one or more criminal offenses . . . when such denial is in violation of the provisions of article twenty-three-A of the [New York] correction law." NYSHRL § 296(15). "Where the Legislature has not been completely silent but has instead made express provision for civil remedy, albeit a narrower remedy than the plaintiff might wish, the courts should ordinarily not attempt to fashion a different remedy, with broader coverage, on the basis of a different statute, at least where, as here, the two statutes address the same wrong." *Sheehy*, 541 N.E.2d at 22. The creation of an additional private cause of action directly under Section 752 of the Correction Law would be inconsistent with the legislative scheme.

Plaintiff cites Judge Nathan's opinion in *Millien v. Madison Square Garden* for the proposition that "[w]hile Article 23-A does not appear to have a private right of action, the NYCHRL effectively creates one for those who apply to positions in New York City." Dkt. No. 44 at 8–10 (citing *Millien*, 2020 WL 4572678, at *2). However, as a product of the New York City Council, the NYCHRL cannot alter the substance or effect of a state law such as Article 23-A of the Correction Law. *See* N.Y. Mun. Home Rule Law 22 ("No local law shall supersede any

provision of a state statute except as authorized by the constitution, this chapter or any other state statute.").  Indeed, the NYCHRL's "effective creation" to which Judge Nathan referred is simply Section 8-107(10)(a) of the NYCHRL—pursuant to which Plaintiff has already stated a claim.  *See Millien*, 2020 WL 4572678, at *2.  The NYCHRL therefore does not somehow create a separate cause of action under Section 752 of the Correction Law, but instead contains its own cause of action incorporating the mechanisms stated in Article 23-A of the Correction Law.

Because Section 752 of the Correction Law does not contain a private right of action, Defendants' motion to dismiss Plaintiff's seventh cause of action is granted.

## V. Defendants' Motion to Dismiss the Third and Sixth Causes of Action for Aiding and Abetting Prior Criminal Conviction Discrimination

Defendants argue that even if Plaintiff is able to plead a viable claim against MSG for discrimination on the basis of prior criminal conviction, he has failed to plead a claim for aiding and abetting discrimination on the basis of criminal conviction against any of the Individual Defendants.  Dkt. No. 43 at 21.

Section 296(6) of the NYSHRL states that "[i]t shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article [including discrimination and retaliation], or to attempt to do so."  This provision creates liability for "a co-worker who 'actually participates in the conduct giving rise to a discrimination claim.'"  *Feingold v. New York,* 366 F.3d 138, 157 (2d Cir. 2004) (quoting *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995)).  To "actually participate" in the discrimination, an individual employee need not take part in the primary violation, however, "if the plaintiff fails to plead any facts suggesting that a defendant displayed any intent to discriminate or was in any way involved in the alleged discriminatory scheme, the defendant may not be held liable under the [NYS]HRL."  *Lewis v. Triborough Bridge & Tunnel Auth.*, 77 F. Supp. 2d 376, 380–81 (S.D.N.Y.

1999).   "[A] claim is stated if an employee participates in the alleged conduct, regardless of whether such participation also constitutes a primary violation of NYSHRL or whether other employees were involved."  *Bonterre v. City of New York*, 2021 WL 4060358, at *8 (S.D.N.Y. Sept. 7, 2021).

"The NYCHRL's § 8–107(6) also supports claims for aiding and abetting, which are 'susceptible to the same standard as under the NYSHRL, as [the] language of the two laws is virtually identical.'"  *Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 367 (S.D.N.Y. 2012) (quoting *Schanfield v. Sojitz Corp. of Am.,* 663 F.Supp.2d 305, 344 (S.D.N.Y.)); *see also Feingold*, 366 F.3d at 158; *Colbert v. FSA Store, Inc.*, 2020 WL 1989404, at *5 (S.D.N.Y. Apr. 27, 2020).  As with the primary discrimination claims themselves, courts must assess claims for aiding and abetting discriminatory conduct brought pursuant to the NYCHRL more liberally than those brought pursuant to the NYSHRL.  *See Hoff v. WPIX, Inc.*, 2011 WL 4809763, at *3 (S.D.N.Y. Oct. 11, 2011) (citing N.Y.C. Loc. Law No. 85 § 1).

The bar for pleading "actual participation" at the motion to dismiss stage is low.  *See, e.g.*, *Stevens v. New York*, 691 F. Supp. 2d 392, 401 (S.D.N.Y. 2009) (allegations that first defendant summoned plaintiff to the meeting where he was terminated and second defendant was present at the meeting constitute "allegations that they were at least in some way directly involved in his termination [and] are sufficient to allow his claims against them to survive the motion to dismiss stage"); *Tyson v. Town of Ramapo*, 2019 WL 1331913, at *17 (S.D.N.Y. Mar. 25, 2019) (plaintiff adequately pled that defendant who "processed her termination" directly participated in her termination).

Because the underlying discrimination statutes pertain to denial of employment, the proper inquiry is the Individual Defendants' involvement in Plaintiff's termination. NYSHRL § 296(15); NYCHRL § 8–107(6).

### A.    Jackson, Conroy, and Bailey

Jackson is the Chief of Staff of Threat Management and Security at MSG. AC ¶ 21. Bailey is Manager of Threat Management at MSG. *Id.* ¶ 22. Conroy is another employee or manager in the Threat Management department at MSG. *Id.* ¶ 23. Plaintiff alleges that defendants Jackson, Conroy, and Bailey authorized and facilitated the posting of MSG's notice that Plaintiff was a registered sexually violent offender with a high risk-level for whom other MSG employees should "be on the look out." *Id.* ¶ 102. Plaintiff also alleges that the posting listed Jackson, Conroy, and Bailey as contract persons if Plaintiff was seen on or near the venue property and contained their names and contract information. *Id.* ¶¶ 99–100. Plaintiff does not allege that any of the three were present at, or otherwise involved in, the post-termination Step 1 Grievance Hearing.

Plaintiff argues that Jackson, Conroy, and Bailey's acts were "intended to embarrass and humiliate Plaintiff in furtherance of their mission to wrongfully terminate Plaintiff due to his alleged criminal history." Dkt. No. 44 at 20–22. However, the Amended Complaint does not allege that the posting gave effect to the termination or otherwise served as a catalyst. *See, e.g.*, *de Souza v. Planned Parenthood Fed'n of Am., Inc.*, 2023 WL 2691458, at *13 (S.D.N.Y. Mar. 29, 2023) ("Walker also is not liable for Plaintiff's firing because there is no evidence he played any role in the decision to fire her."). Therefore, Plaintiff's allegations fail to raise an inference that Jackson, Conroy, or Bailey "actually participated" in Plaintiff's discriminatory termination, and Plaintiff's claims for aiding and abetting prior conviction discrimination must be dismissed as to Jackson, Conroy, and Bailey. *Feingold*, 366 F.3d at 157.

### B.    Martin and McNamara

Plaintiff's claims regarding Martin and McNamara are similarly sparse.  Martin is the Senior Director of People Practices at MSG.  AC ¶ 25.  McNamara is in-house counsel for MSG. *Id.* ¶ 26.  Plaintiff alleges that Martin and McNamara knew about and approved the posting and found nothing wrong with it.  *Id.* ¶¶ 87–88.  He also alleges that Martin and McNamara attended the Step 1 Grievance Hearing with Plaintiff and his union representative, *id.* ¶ 187, and that at that hearing, Martin stated without proof that Plaintiff was terminated for violating a directive of Jennings, *id.* ¶¶ 188–189.  Furthermore, Plaintiff and his union representative repeatedly requested evidence as to why he was terminated but Martin and McNamara denied those requests and failed to present specifics of Plaintiff's alleged wrongdoing at the hearing, despite the fact that "the specifics of the (alleged) violations were supposed to be disclosed and discussed" at the hearing. *Id.* ¶¶ 190, 193.

The Amended Complaint falls short of alleging that Martin or McNamara actually participated in the termination itself as the only connected allegation is that Martin and McNamara "knew about" the posting and were later involved in the after-the-fact Step 1 Grievance Hearing. Neither course of involvement rises to the level of active participation in the denial of Plaintiff's employment.  *See Sassi*, 175 N.E.3d at 1249–50; *de Souza*, 2023 WL 2691458, at *13.  Because Plaintiff does not allege Martin or McNamara's actual participation in the conduct giving rise to his discrimination claim, Plaintiff's claims for aiding and abetting prior conviction discrimination fail and Defendants' motion to dismiss the third and sixth causes of action is granted as to Martin and McNamara.  *Feingold*, 366 F.3d at 157.

**VI. Defendants' Motion to Dismiss the Thirteenth and Fifteenth Causes of Action for Aiding and Abetting Disability Discrimination as to Martin and McNamara**

Plaintiff alleges in the alternative that if MSG terminated Plaintiff for making excessive visits to the staffing office—as opposed to because of his prior conviction—such grounds for termination would still be discriminatory because Plaintiff's visits to the staffing office were due to his ADD/ADHD.  Dkt. No. 44 at 28–29.  Plaintiff alleges that on one occasion (and never again), Jennings instructed Plaintiff that he "should not enter the staff[ing] office if Plaintiff did not need to."  AC ¶¶ 65, 72.  This instruction confused Plaintiff because he believed that employees were supposed to report to the staffing office to resolve issues related to work and for assistance with schedules and other work-related matters.  *Id.* ¶ 66.  Therefore, Plaintiff "continued to visit the staff[ing] office when he needed work related assistance because [he] did not know where else to get the assistance he needed."  *Id.* ¶ 67.  Plaintiff alleges that he "would often advise the personnel in the staffing office that he was coming to them for help because he was 'slow' to figure some things out, 'couldn't understand how to do' certain things and/or has 'ADD/ADHD.'"  *Id.* ¶ 70 (emphasis omitted).  The Amended Complaint states that Jennings did not tell similarly situated employees without disabilities to refrain from visiting the staffing office.  *Id.* ¶ 77.

Plaintiff's claims for aiding and abetting disability discrimination under Section 296(6) of the NYSHRL and Section 8-107(6) of the NYCHRL are subject to the same "actual participation" requirement as his claims for aiding and abetting discrimination on the basis of a prior conviction.  *See Scalera v. Electrograph Sys., Inc.*, 848 F. Supp. 2d 352, 371 (E.D.N.Y. 2012); *Malena*, 886 F. Supp. 2d at 367.  Defendants do not contest the underlying disability discrimination claims and solely argue that the aiding-and-abetting claims should dismissed as to Martin and McNamara because Plaintiff failed to allege their actual participation in the discriminatory conduct.  Dkt. No. 43 at 27; Dkt. No. 48 at 19 n.12.

Plaintiffs asserting claims for disability discrimination under the NYCHRL and NYSHRL may identify a broader range of adverse employment actions than claims for prior discrimination on the basis of prior criminal conviction. *Compare* NYSHRL § 296(1) *and* NYCHRL § 8-107(1) *with* NYSHRL § 296(15) *and* NYCHRL § 8-107(10).  Disability discrimination plaintiffs are not limited to pleading "denial of employment" and instead must plead a "materially adverse change in the terms and conditions of employment" such as "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Cherry v. N.Y.C.H.A.*, 564 F. Supp. 3d 140, 178 (E.D.N.Y. 2021) (citing *Kairam v. West Side GI, LLC*, 793 F. App'x 23, 27 (2d Cir. 2019)).

Nonetheless, Plaintiff identifies only his termination and the ineffectiveness of the grievance hearing as the adverse employment actions giving rise to his aiding-and-abetting-disability-discrimination claims against Martin and McNamara.  Dkt. No. 44 at 27, 29.  As stated *supra*, Plaintiff does not adequately plead Martin and McNamara's participation in his termination, and the post-termination grievance hearing cannot constitute a material change in the terms of Plaintiff's employment, *see McAllister*, 2007 WL 9724345, at *1.  Defendants' motion to dismiss Plaintiff's thirteenth and fifteenth causes of action is therefore granted.

## VII.   Defendants' Motion to Dismiss the Eighth and Ninth Causes of Action for Breach of Contract and Tortious Interference with Contract

Plaintiff's eighth cause of action alleges a claim against MSG for breach of the collective bargaining agreement governing Plaintiff's employment.  AC ¶¶ 217–233.  Plaintiff alleges that Defendants breached the collective bargaining agreement by subjecting him to discrimination in the workplace, creating the posting, subjecting him to summary discipline and termination without due process or the procedures afforded him under the collective bargaining agreement, and by

excluding him from the premises without giving him an opportunity to address the issues Defendants had with respect to his employment. *Id.* In his ninth cause of action, Plaintiff alleges that the individual defendants caused MSG to violate its obligations under the collective bargaining agreement not to discriminate against him. *Id.* ¶¶ 234–243.

Defendants argue that Plaintiff's contract and tortious interference claims are preempted by Section 301 of the LMRA. Section 301 of the LMRA seeks "to ensure uniform interpretation of collective-bargaining agreements" throughout the country "to promote the peaceable, consistent resolution of labor-management disputes." *Lingle v. Norge Div. of Magic Chef Inc.,* 486 U.S. 399, 404 (1988). Thus, "if the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law . . . is pre-empted and federal labor-law principles . . . must be employed to resolve the dispute." *Id.* at 405–06. Even where "plaintiffs formulate their complaint as based on state tort law, that formulation is not binding upon [courts] where rights and obligations under the pertinent collective agreement are inextricably involved in the underlying claim." *Dougherty v. Am. Tel. & Tel. Co.,* 902 F.2d 201, 203 (2d Cir.1990); *see Allis-Chalmers Corp*, 471 U.S. at 211 ("[Q]uestions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort.").

Plaintiff argues that his state law claims are not preempted by federal labor law because "[t]he test for determining whether a state law claim is preempted by section 301 is 'whether the claims exist independent of any rights established by the contract or whether the claims are inextricably intertwined with considerations of the terms of the contract.'" Dkt. No. 44 at 25 (punctuation omitted) (quoting *Fleming v. Stop & Shop Supermarket Co.*, 1997 WL 298399, at *7

(D. Conn. Mar. 31, 1997)).  In *Fleming*, the court held that "the plaintiff's claims of negligent infliction of emotional distress and invasion of privacy are independent of any rights or obligations arising out of the collective-bargaining agreement" and therefore were not preempted.  *Fleming*, 1997 WL 298399, at *7.  Here, by contrast, Plaintiff's claims sound in breach of contract and are necessarily dependent upon the rights and obligations of the contract.  *See Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 23 (1983) ("[T]he preemptive force of § 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization." (internal citations and quotations omitted)); *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987) (same).  Plaintiff's claim is founded on its face on the collective bargaining agreement reached by his bargaining agent with MSG.  He alleges that as a union member, he "had collective bargaining rights to his employment as a result of a duly negotiated and executed agreement between [his] union and defendant MSG," AC ¶ 218 (capitalization normalized), and that Defendants breached that collective bargaining agreement, *id.* ¶¶ 225–228.  His claim thus turns upon an interpretation of the language of the collective bargaining agreement and is preempted by Section 301.

For the same reasons, Plaintiff's tortious interference with contract claim is also preempted.  Although that claim is nominally asserted against the Individual Defendants and not against MSG, it turns upon the language of the collective bargaining agreement and the allegation that MSG violated its obligations under that agreement.   Plaintiff's tortious interference claim is "substantially dependent upon interpretation of the collective-bargaining agreement," *Caterpillar*, 482 U.S. at 395, and is thus preempted.  *See Spiegel v. Bekowies*, 2015 WL 3429107, at *3 (S.D.N.Y. May 27, 2015) (tortious interference with contract claims are preempted by Section 301

because a prima facie claim of tortious interference with contract requires interpretation of the underlying contract), *aff'd*, 669 F. App'x 38 (2d Cir. 2016).

It does not help Plaintiff to construe his claim as a hybrid claim arising directly under Section 301 because "plaintiff's putative hybrid LMRA § 301 claim would still be dismissed because it fails to satisfy the applicable statute of limitations." *Doyle v. United Airlines, Inc.*, 914 F. Supp. 2d 325, 337 (E.D.N.Y. 2012). The statute of limitations under LMRA is six months from when the violation accrued. *Id.* Plaintiff filed suit on October 24, 2023, more than a year after the alleged discrimination, termination, and inadequate grievance process that Plaintiff alleges occurred in August and September 2022. AC ¶¶ 8, 80–100, 134, 157, 187–203.

Plaintiff's eighth and ninth causes of action are therefore preempted and time-barred. *See Doyle*, 914 F. Supp. 2d at 339; *Carrion v. Enter. Ass'n*, 1999 WL 294721, at *2–3 (E.D.N.Y. Mar. 5, 1999), *aff'd sub nom. Carrion v. Enter. Ass'n, Metal Trades Branch Loc. Union 638*, 227 F.3d 29 (2d Cir. 2000).

## CONCLUSION

The partial motion to dismiss is GRANTED in part and DENIED in part. The partial motion to dismiss is granted as to Plaintiff's second, third, fifth, sixth, seventh, eighth, ninth, tenth, thirteenth, and fifteenth causes of action. The partial motion to dismiss is denied as to Plaintiff's first and fourth causes of action.

The Clerk of Court is respectfully directed to close Dkt. Nos. 31 and 42.


SO ORDERED.

Dated: August 26, 2024
      New York, New York
                                                    LEWIS J. LIMAN
                            United States District Judge