```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  7/8/2025
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
STEVIE ROBINSON,

                Plaintiff,

            -v-                                              23-cv-9366 (LJL)

MSG ENTERTAINMENT GROUP, LLC, et al.,           OPINION AND ORDER

                Defendants.
------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

Plaintiff Stevie Robinson ("Plaintiff") moves, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the counterclaims at Dkt. No. 61 ("Counterclaims") brought by Defendants MSG Entertainment Group, LLC, MSG Entertainment Holdings, LLC, MSG Arena, LLC ("MSG Arena"), and Darian Jennings ("Jennings") (collectively "Defendants"). Dkt. No. 62. For the following reasons, Plaintiff's motion to dismiss is granted in part and denied in part.

## BACKGROUND

The Court accepts the allegations of Defendants' Answer and Counterclaims, Dkt. No. 61,[1] as true for the purposes of this motion.[2]

Nearly twenty-five years ago, Plaintiff was convicted by a jury of first-degree sodomy, two counts of first-degree sexual abuse, and one count of endangering a child. Counterclaims ¶ 4. He was sentenced to a term of twenty-five years' imprisonment and was released early, in April 2021. *Id*. ¶¶ 6–7. He will remain under parole supervision until April 2026. *Id*. ¶ 7. As a result of his

---

[1] Defendants' Answer to Plaintiff's Second Amended Complaint, Defenses, Counterclaims, and Prayer for Relief are all included in the same document. Dkt. No. 61. For clarity, the Court will specify whether citations are to the Answer, Defenses, Counterclaims, or Prayer for Relief.

[2] The Court accordingly disregards the differing factual allegations set forth in Plaintiff's Second Amended Complaint, Dkt. No. 59.

conviction, Plaintiff is registered as a Sexually Violent Offender with a "Level 3" risk level, which is the highest available designation and connotes that Plaintiff has a "high risk of repeat offense and that there exists a threat to the public safety." *Id*. ¶¶ 8–9.

In November of 2021, a few months after his release, Plaintiff applied for a position as an usher at MSG Arena. Answer ¶ 38. MSG Arena conducts pre-hire criminal background checks on job candidates before extending final offers of employment. Counterclaims ¶ 10. MSG Arena requires that those applying to be an usher undergo a background check. *Id*. ¶ 19. The purpose of the background check is to "ensure the safety and security of defendants' employees and patrons, as well as their property" by assessing whether the applicant's criminal history bears a "direct relationship" with the job or whether the "criminal record creates an unreasonable risk to specific persons, the general public, or Defendant's property." *Id*. ¶¶ 13–14. To conduct these background checks, MSG Arena engages Accurate Background, LLC ("Accurate"), a provider of employment background screening services. *Id*. ¶¶ 16–17. Applicants undergoing a background check must provide Accurate with certain personal, identifying information, including their full name, date of birth, social security number, and contact information. *Id*. ¶ 23.

After interviewing Plaintiff, MSG Arena extended to Plaintiff a conditional offer of employment that was subject to the results of Plaintiff's background check. Answer ¶¶ 44–45. On or about November 24, 2021, MSG Arena emailed Plaintiff to inform him that he would need to undergo a background check as part of his pre-employment hiring process. Counterclaims ¶ 20. In that email, MSG Arena explained that Plaintiff would have to create an account with Accurate to facilitate the background check and that Accurate would send Plaintiff an email containing instructions for creating the account. *Id*. ¶ 21. Accurate sent the email containing the instructions to Plaintiff on or about November 24, 2021. *Id*. ¶ 24.

On November 29, 2021, MSG Arena emailed Plaintiff to remind him to create the Accurate account so the background check could be performed. *Id*. ¶ 25. On or about December 6, 2021, Plaintiff replied to MSG Arena's November 24 email, asking MSG Arena to renew his application so that he could provide the necessary background check materials. *Id*. ¶ 26. MSG Arena did so, and on or about December 8, 2021, Accurate sent a new link to Plaintiff. *Id*. ¶¶ 26–27. Plaintiff then created an account and provided Accurate with the requested information. *Id*. ¶ 28. Plaintiff provided an electronic signature verifying that the information he submitted was truthful. *Id*. ¶ 33.

Although Plaintiff was born in 1963, Plaintiff's submission to Accurate stated that he was born in 1966. *Id*. ¶¶ 31–32. The New York State Sex Offender Registry records Plaintiff's birth year as 1963, *id*. ¶ 35, and Plaintiff stated on his I-9 Employment Eligibility Verification form that he was born in 1963, *id*. ¶ 36. Because his birth year was represented as 1966, Accurate's search did not yield any results indicating that Plaintiff had a criminal record, and Accurate's background screening report reflected that Plaintiff "Meets Requirements." *Id*. ¶¶ 37–38. Because the background screening report indicated that Plaintiff "Meets Requirements," *id*., MSG Arena extended an offer of employment to Plaintiff, Answer ¶ 48. Plaintiff worked for MSG Arena as an usher from December 2021 until his employment was terminated in August 2022. Counterclaims ¶ 1.

During his employment, Plaintiff frequently visited the Staff Services Office ("Office") for non-work-related reasons, including to "seek out and harass" a specific female employee. Answer ¶ 64. On at least one occasion, Plaintiff touched the female employee in an unwelcome manner. *Id*. When Plaintiff entered the Office but the female employee was not present, Plaintiff would leave the Office without presenting a reason for having gone to the Office. *Id*. Other female employees reported feeling uncomfortable around Plaintiff. *Id*. Jennings, the employee relations

3

manager at MSG Arena, instructed Plaintiff on multiple occasions to refrain from visiting the Office for personal, non-work-related reasons. *Id*. ¶ 66. Plaintiff also received "coaching" regarding his visits. *Id*. ¶ 74. Despite these instructions, Plaintiff continued to visit the Office for non-work-related reasons. Counterclaims ¶ 44. After numerous attempts to reach Plaintiff, Answer ¶ 136, Jennings was able to speak with Plaintiff by phone on August 8, 2022, and informed him that he was being terminated from his position as an usher because of "his inability to follow directions regarding inappropriate visits to the office," *id*. ¶ 140.

## PROCEDURAL HISTORY

Plaintiff initiated this action by complaint filed on October 24, 2023. Dkt. No. 1.

On January 16, 2024, Defendants filed a partial motion to dismiss Plaintiff's complaint. Dkt. No. 31. On August 26, 2024, the Court granted the partial motion to dismiss with respect to ten of Plaintiff's causes of actions but denied the partial motion to dismiss with respect to two causes of action. Dkt. No. 53. On October 16, 2024, Plaintiff filed his Second Amended Complaint ("SAC"). Dkt. No. 59. On October 24, 2024, Defendants filed their Answer to the SAC, as well as two counterclaims against Plaintiff. Dkt. No. 61. On November 1, 2024, Plaintiff filed a motion to dismiss Defendants' counterclaims and a memorandum of law in support of the motion. Dkt. No. 62. On November 15, 2024, Defendants filed a memorandum of law in opposition to Plaintiff's motion to dismiss Defendants' Counterclaims. Dkt. No. 63. Plaintiff did not file a reply.

## LEGAL STANDARD

"A motion to dismiss a counterclaim is evaluated under the same standard as a motion to dismiss a complaint." *Town & Country Linen Corp. v. Ingenious Designs LLC*, 2020 WL 3472597, at *4 (S.D.N.Y. June 25, 2020) (quoting *Orientview Techs. LLC v. Seven For All*

*Mankind, LLC*, 2013 WL 4016302, at *2 (S.D.N.Y. Aug. 7, 2013)). On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a court must accept as true all factual allegations in the complaint and draw all possible inferences from those allegations in favor of the claimant. *See Rombach v. Chang*, 355 F.3d 164, 169 (2d Cir. 2004). This requirement "is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

A complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement" in order to survive dismissal. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The ultimate question is whether "[a] claim has facial plausibility, [i.e.,] the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. Put another way, the plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]." *Twombly*, 550 U.S. at 556; *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011) (same).

## DISCUSSION

In their Counterclaims, Defendants allege that if Plaintiff had correctly represented his birth year to Accurate, his criminal history and registration as a sex offender would have surfaced during Accurate's search of the National Sex Offender Database. Counterclaims ¶ 39. Accurate's background screening report would then have reflected that it "Needs Review." *Id*. ¶ 40. Upon reviewing Plaintiff's criminal history, MSG Arena "almost certainly" would have rescinded the conditional offer of employment because there is a "direct relationship" between his record and

the usher position and because he would pose an unreasonable risk to patrons of the Madison Square Garden arena, especially minors. *Id*. ¶¶ 41–42.

Defendants allege that Plaintiff knew he misrepresented his birth year to Accurate and that he did so in order to conceal his criminal history and his registration as a sex offender. *Id*. ¶ 31. According to Defendants, this amounts to fraudulent inducement. *Id*. ¶ 46.[3] Defendants also claim that this fraud resulted in Plaintiff's unjust enrichment at the expense of Defendants. *Id*. ¶¶ 57–58.

## I.    Fraudulent Inducement

"The essential elements of a cause of action for fraud are 'representation of a material existing fact, facility, scienter, deception and injury.'" *N.Y.U. v. Contl Ins. Co.*, 662 N.E.2d 763, 769 (N.Y. 1995) (quoting *Channel Master Corp. v. Aluminum Ltd. Sales, Inc.*, 151 N.E.2d 833, 835 (N.Y. 1958)). "To state a claim for fraud or inducement under New York law, a party must allege material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff, and damages." *Transnat'l Mgmt. Sys. II, LLC v. Carcione*, 2016 WL 7077040, at *5 (S.D.N.Y. Dec. 5, 2016). "To state a claim for fraudulent inducement, there must be a knowing misrepresentation of material present fact, which is intended to deceive another party and induce that party to act on it, resulting in injury." *Xeriant, Inc. v. XTI Aircraft Co.*, 762 F. Supp. 3d 345, 353 (S.D.N.Y. 2025) (quoting *GoSmile, Inc. v. Levine*, 915 N.Y.S.2d 521, 524 (1st Dep't 2010)).[4]

---

[3] As stated in the Counterclaims, Defendants' first cause of action is "Fraudulent Inducement/Fraudulent Concealment." Counterclaims ¶ 46. Because Defendants group these two types of fraud together as one cause of action, and because both Plaintiff's memorandum of law in support of his motion to dismiss and Defendants' memorandum of law in opposition discuss only fraudulent inducement, the Court analyzes Defendants' claim as one for fraudulent inducement.

[4] There is no dispute between the parties that New York law governs the claims at issue.

A claim for fraud is subject to the particularity requirements of Federal Rule of Civil Procedure 9(b).  A claimant must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent; (2) identify the speaker; (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004); *see also Caputo v. Pfizer, Inc.*, 267 F.3d 181, 191 (2d Cir. 2001) (stating that to plead fraud with particularity, a complaint must "specify the time, place, speaker, and content of the alleged misrepresentations" and "should explain how the misrepresentations were fraudulent"). Allegations that are "conclusory and unsupported by assertions of fact" are not sufficient to meet the Rule 9(b) standard.  *Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir. 1986).

Defendants sufficiently detail Plaintiff's purportedly fraudulent statements and meet the standards under New York law and under Rule 9(b).  Defendants argue that Plaintiff materially misrepresented the fact of his birth year to Accurate, Counterclaims ¶¶ 31–32, as a result of which Accurate's background check did not detect Plaintiff's criminal history, *id.* ¶ 37.  *Cf. Topps Co., Inc. v. Cadbury Stani S.A.I.C.*, 380 F.Supp.2d 250, 265 (S.D.N.Y. 2005) (finding that, under New York law, a "false 'representation of present fact'" can give rise to a fraudulent inducement claim (citing *Stewart v. Jackson & Nash*, 976 F.2d 86, 89 (2d Cir. 1992))).  Defendants also allege that Plaintiff knew his birth year and was capable of stating it accurately on his job application forms; on his I-9 Employment Eligibility Verification form, which Plaintiff completed after the background check and in what appears to be a separate process, Plaintiff supplied his correct birth year of 1963, *id.* ¶¶ 34–36.  *See Baker v. Dorfman*, 239 F.3d 415, 423–25 (2d Cir. 2000) (affirming district court's finding that defendant's lying about his background on his resume met the requirement that he have knowledge of his statements' falsity and thus constituted fraud).  These

7

statements satisfy Rule 9(b) because the Counterclaim details the statements that Defendants contend are fraudulent; identifies the Plaintiff as the party who allegedly made the misrepresentation; states where and when the misrepresentation of his birth year occurred; and explains why the misrepresentation is fraudulent.

Defendants also meet their burden with respect to the intent element of their fraud claim. While the "circumstances" constituting fraud are subject to a heightened pleading standard under Rule 9(b), "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R. Civ. P. 9(b). To meet their burden, "Plaintiffs must allege facts that give rise to a strong inference of fraudulent intent." *Lerner v. Fleet Bank*, 459 F.3d 273, 290 (2d Cir. 2006) (quoting *Acito v. IMCERA Group, Inc.,* 47 F.3d 47, 52 (2d Cir.1995)). "The requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Id*. at 291 (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)). Defendants demonstrate a "strong inference" of fraud by alleging facts that show that plaintiff had both the motive and the opportunity to commit fraud. *See Shields*, 25 F.3d at 1130 ("Motive would entail concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged. Opportunity would entail the means and likely prospect of achieving concrete benefits by the means alleged."). On his I-9 Employment Eligibility Verification form, Plaintiff correctly stated the year in which he was born, Counterclaims ¶ 36; but on the form that would potentially lead to uncovering his criminal history, Plaintiff incorrectly stated the year in which he was born, *id*. ¶ 31. Plaintiff would have had ample motive to do so intentionally—namely, to prevent his background check from revealing his prior conviction and jeopardizing his job application. And the nature of

8

MSG Arena's hiring practices created an opportunity to commit fraud. Because MSG Arena outsources its background check process to a third party, job applicants are able to provide inconsistent information to MSG Arena and to Accurate without either MSG Arena or Accurate discovering the inconsistencies. Thus, because Defendants allege that Plaintiff had both the motive and the opportunity to commit fraud, they have met their burden with respect to the intent element. *See Glidepath Holding B.V. v. Spherion Corp.*, 590 F.Supp.2d 435, 454–55 (S.D.N.Y. 2007) (denying a motion to dismiss a fraud claim even if "the inference of fraud raised by the complaint . . . is [only] as strong as any opposing inference").

Defendants similarly meet their burden with respect to the reliance element of their fraud claim. The burden at this stage is not onerous. "Whether or not reliance on alleged misrepresentations is reasonable in the context of a particular case is intensely fact-specific and generally considered inappropriate for determination on a motion to dismiss." *Doehla v. Wathne Ltd., Inc.*, 1999 WL 566311, at *10 (S.D.N.Y. 1999); *see also Country World, Inc. v. Imperial Frozen Foods Co.*, 589 N.Y.S.2d 81, 82 (2nd Dep't 1992) ("In a fraud action, whether a party could have ascertained the facts with reasonable diligence so as to negate justifiable reliance is a factual question."). Defendants allege that they "reasonably relied on the accuracy of the background screening report" because Plaintiff had, with his electronic signature, verified the accuracy of the materials he submitted to Accurate. Counterclaims ¶ 52. In *Baker*, the Second Circuit affirmed that the plaintiff had reasonably relied on misrepresentations that the defendant had made on his resume. 239 F.3d at 424. In this case, Defendants' reliance on the *signed* statements of Plaintiff—and not merely on an unsigned resume—is also reasonable. Defendants' Counterclaim thus sufficiently demonstrates reasonable reliance on Plaintiff's statement of his birth year.

9

Defendants meet their burden with respect to the damages element of their fraud claim. Plaintiff argues that the Counterclaims fail to allege damages with sufficient specificity, and that even if the damages were sufficiently specific, those damages would not include the salary that MSG Arena paid to Plaintiff. Dkt. No. 62-1 at 13.

Plaintiff is likely correct that even if Defendants ultimately succeed in proving that Plaintiff engaged in fraud, New York law would prohibit Defendants from recovering the entirety of Plaintiff's salary. As the New York Court of Appeals explained:

> The true measure of damage is indemnity for the actual pecuniary loss sustained as the direct result of the wrong or what is known as the "out-of-pocket" rule. Under this rule, the loss is computed by ascertaining the difference between the value of the bargain which a plaintiff was induced by fraud to make and the amount or value of the consideration exacted as the price of the bargain.

*Lama Holding Co. v. Smith Barney Inc.*, 668 N.E.2d 1370, 1373 (N.Y. 1996) (cleaned up).

During the period that MSG Arena employed Plaintiff, MSG Arena benefited from Plaintiff's work as an usher. Defendants do not claim that Plaintiff's work itself was substantively affected by the alleged fraud. Nor do they claim that there is a causal connection between Plaintiff's fraudulent inducement and the reasons for his firing (such as by claiming that but for the alleged misrepresentation Defendants would have been able to foresee Plaintiff's inappropriate visits to the Office and so would not have hired him). As a result, if MSG hired someone else as an usher, MSG presumably would have paid them the same salary they paid Plaintiff. Any calculation of Defendants' damages for fraud would be limited to Defendants' "actual pecuniary loss."

Nonetheless, Defendants plead damages sufficient to withstand a motion to dismiss because, at this stage, allegations of damages can be highly general. The Counterclaims make no reference to specific injuries or damages Defendants incurred as a result of Plaintiff's misrepresentation of his birth year, nor does it contain a precise calculation of damages. The

10

Counterclaim merely asks, in its Prayer for Relief, for "actual damages according to proof," "liquidated damages as provided by statute," "punitive damages according to proof," and attorneys' fees. Prayer for Relief ¶¶ 1–3. Plaintiff argues that Rule 9(b) requires a specific allegation of damages. But the particularity requirement of Rule 9(b) does not apply to damages. *See Cohen v. Sudler & Hennessey, LLC*, 2010 WL 3431534, at *3 (S.D.N.Y. 2010) (holding that "[u]nder Rule 9(b) . . . a plaintiff must only allege with particularity the circumstances of the fraud" and that heightened standard does not apply to the damages element); *Xcellence, Inc. v. Arkin Kaplan Rice LLP*, 2011 WL 1002419, at *5 (S.D.N.Y. 2011) (holding that an allegation that the claimant "was 'damaged in an amount to be determined at trial'. . . is sufficient to withstand a motion to dismiss."). Specification of damages is the province of initial disclosures and discovery under Federal Rule of Civil Procedure 26 and not of the complaint. Moreover, in their memorandum of law in opposition to the motion to dismiss, Defendants specify that their damages include the cost of training and replacing Plaintiff, costs they would not have incurred had Plaintiff accurately represented his birth year and not been hired by MSG Arena. Dkt. No. 63 at 7. *See also Goldberg v. Mallinckrodt, Inc.*, 792 F.2d 305, 307 (2d Cir. 1986) ("Under New York law, damages for fraud must be the direct, immediate, and proximate result of the fraudulent misrepresentation."). Defendants' allegations of damages are thus sufficient to survive a motion to dismiss.

## II. Unjust Enrichment

"To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006) (quoting *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir.

11

2000) (Sotomayor, J.)). "The essential inquiry in any action for unjust enrichment . . . is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered." *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1110 (N.Y. 2011) (internal citation and quotation marks omitted). Thus, courts "look to see if a benefit has been conferred on the defendant under mistake of fact or law, if the benefit still remains with the defendant, if there has been otherwise a change of position by the defendant, and whether the defendant's conduct was tortious or fraudulent." *Columbia Mem'l Hosp. v. Hinds*, 192 N.E.3d 1128, 1137 (N.Y. 2022) (quoting *Paramount Film Distrib. Corp. v. State*, 285 N.E.2d 695, 695 (N.Y. 1972)).

Defendants' unjust enrichment claim fails because Defendants have not alleged facts demonstrating that equity and good conscience require that they recover the benefits they provided to Plaintiff. In New York, "[r]ecovery on [an unjust enrichment] claim is 'limited to the reasonable value of the services rendered by the [claimant].'" *Giordano v. Thomson*, 564 F.3d 163, 170 (2d Cir. 2009) (quoting *Collins Tuttle & Co. v. Leucadia, Inc.,* 544 N.Y.S.2d 604, 605 (1st Dep't 1989)). It is true that Plaintiff has retained "the bundle of benefits" he earned during his months of employment at MSG Arena, Dkt. No. 63 at 13,[5] and, as his employer, MSG Arena provided him with those benefits. Yet Defendant provided these "benefits" to Plaintiff in exchange for Plaintiff's labor. Defendants do not claim that Plaintiff's work was substantively affected by his criminal history nor that his labor was worth any less than what MSG Arena pays other ushers. Thus the "reasonable value" of the "benefits" Defendants provided to Plaintiff is equivalent to labor Plaintiff provided for Defendants in exchange for those benefits. As a result, Defendants cannot claim that Plaintiff should return his wages or benefits, for on the pleadings there is no imbalance meriting recovery or restitution. *See Indyk v. Habib Bank Ltd.*, 694 F.2d 54, 58 (2d Cir.

---

[5] ECF pagination.

1982) (an unjust enrichment claim "requires the indispensable ingredient that between the two parties involved there must be an injustice"); *Bugarsky v. Marcantonio*, 678 N.Y.S.2d 737, 738 (2d Dep't 1998) (rejecting an unjust enrichment claim because "there was no showing that [defendant] obtained any benefit that in equity and good conscience he should not have obtained or possessed because it rightfully belonged to another"). Defendants' unjust enrichment claim is therefore dismissed.

## CONCLUSION

Plaintiff's motion to dismiss is GRANTED IN PART and DENIED IN PART. The motion to dismiss is DENIED with respect to Defendants' counterclaim for fraudulent inducement and GRANTED with respect to Defendants' counterclaim for unjust enrichment.

The Clerk of Court is respectfully directed to close Dkt. No. 62.

SO ORDERED.

Dated: July 8, 2025
      New York, New York

                                         LEWIS J. LIMAN
                                       United States District Judge